Opinion issued August 31, 2005


















In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00733-CV
____________

EVELYN LITTLE, Appellant

V.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND GARY JOHNSON,
DIRECTOR, Appellees



 
On Appeal from the 278th District Court
Walker County, Texas
Trial Court Cause No. 21013C
 

 
 
O P I N I O N
          Appellant, Evelyn Little, challenges a summary judgment granted in favor of
appellees, the Texas Department of Criminal Justice and its executive director, Gary
Johnson, in his official capacity (collectively the “TDCJ”), in her suit alleging a
violation of chapter 21 of the Labor Code. See Tex. Lab. Code. Ann.
§§ 21.001–.556 (Vernon 1996 & Supp. 2004-2005). In her sole issue, Little contends
that the trial court erred in granting summary judgment for the TDCJ because the
TDCJ knew that she had a disability and did not hire her as a food service manager
because of her disability. 
          On appeal, we originally held that the trial court did not err in granting the
TDCJ’s summary judgment motion because we concluded that Little failed to make
a threshold showing that she had a disability


 and, thus, failed to present sufficient
evidence to establish a prima facie case of discrimination. Little v. Tex. Dep’t of
Criminal Justice, 147 S.W.3d 421, 424–25 (Tex. App.—Houston [1st Dist.] 2003), 
rev’d, 148 S.W.3d 374, 384 (Tex. 2004). The Texas Supreme Court reversed our
judgment, holding that we erred in affirming the TDCJ’s summary judgment because
“there [was] probative summary judgment evidence that, at the time of the adverse
employment actions of which she complains, Little had a ‘physical impairment that
substantially limit[ed] at least one major life activity.’” Little v. Tex. Dep’t of
Criminal Justice, 148 S.W.3d 374, 384 (Tex. 2004). Pursuant to the Texas Supreme
Court’s remand, we now consider the TDCJ’s second ground for summary judgment,
i.e., “that Little had no direct evidence of discriminatory intent, and that she could not
raise an inference of discriminatory intent by proving that the TDCJ’s articulated
reasons for its adverse employment actions against her were a pretext for
discrimination.” Id. 
          We reverse and remand.
Factual and Procedural Background 
          In 1974, the lower half of Little’s left leg was amputated after she suffered an
accidental shotgun wound. Little wears a prosthesis on her left leg and, while able
to walk, moves with a discernable limp. Between October 1996 and April 1999,
Little applied on 14 separate occasions


 to the TDCJ for a food service manager
position at various prison units. For each position, Little filled out written application
forms, answered written and/or oral questions, and was interviewed by a board
consisting of a ranking food service department supervisor and a warden, assistant
warden, or major. Little was not hired by the TDCJ for any of the food service
manager positions.
          Little brought her discrimination claim under chapter 21 of the Texas Labor
Code, but the Texas Commission on Human Rights concluded that “further
investigation will not result in a Cause Finding.” Little then brought this suit against
the TDCJ, and the TDCJ moved for summary judgment, arguing that (1) Little failed
to prove that she is “disabled” or that the TDCJ perceived her to be “disabled” under
the Labor Code; (2) Little could not show that she was the best qualified applicant
and, thus, could not prove a pretext by the TDCJ in its selection decisions; and
(3) there was no evidence of intentional discrimination. In support of its summary
judgment motion, the TDCJ attached (1) excerpts of Little’s deposition testimony;
(2) an affidavit of a TDCJ human resource specialist, Kathy Cook, who summarized
the completed application, interview, and selection records regarding Little and the
selected applicants for each of the 14 documented positions for which Little applied;
(3) the TDCJ’s employment guidelines and blank forms regarding the various steps
in the TDCJ’s hiring process; (4) a 31-page “Summary and Analysis of Interview
Paperwork” report compiled by Cook regarding the applications and interview
records of Little and the selected applicants for food service manager positions on 14
separate occasions; and (5) a five-page “Synopsis of Summary and Analysis of
Interview Paperwork” report also written by Cook regarding the applications and
interview documents of Little and the selected applicants. 
          The 31-page report written by Cook is a compilation of (1) the job-related
“experience documented on [the] applications” of Little and the selected applicants
for each food service manager position; (2) answers given by Little and the selected
applicants to interview questions provided on “interview documentation forms”;
(3) the TDCJ’s evaluation of Little’s and the selected applicants’ job-related
education, training, and certificates; job-related experience; communication skills;
and interpersonal skills; and (4) the TDCJ’s rationale for its selections for each of the
positions. Additionally, the five-page report written by Cook summarizes the
information complied by Cook in the 31-page report regarding Little and the selected
applicants for each position.
          In her response to the TDCJ’s summary judgment motion, Little asserted that
“[t]here is ample evidence that the [TDCJ’s] explanation for refusing to hire Ms.
Little is false.” In support of her response, she attached (1) her own affidavit;
(2) excerpts from Cook’s deposition testimony; (3) excerpts from the deposition
testimony of five TDCJ’s employees who were involved in the interview and hiring
processes for the food service manager positions for which Little applied; (4) copies
of the completed application forms, “interview documentation form[s],” and interview
schedules for Little and the selected applicants for numerous food service manager
positions for which Little applied between 1996 and 1999; and (5) a job description
for the “Food Service Manager II” position.
          On June 6, 2002, the trial court, without specifying the grounds on which it
relied, signed an order granting the TDCJ’s motion for summary judgment.
Standard of ReviewBecause the propriety of a summary judgment is a question of law, we review
the trial court’s summary judgment decision de novo. Little, 148 S.W.3d at 381. To
prevail on a summary judgment motion, a movant has the burden of proving that it
is entitled to judgment as a matter of law and that there is no genuine issue of material
fact. Tex. R. Civ. P. 166a(c); Little, 148 S.W.3d at 381; Farah v. Mafrige &
Kormanik, P.C., 927 S.W.2d 663, 670 (Tex. App.—Houston [1st Dist.] 1996, no
writ). In deciding whether there is a disputed material fact issue precluding summary
judgment, proof favorable to the non-movant is taken as true, and the court must
indulge every reasonable inference and resolve any doubts in favor of the non-movant. Little, 148 S.W.3d at 381; Lawson v. B Four Corp., 888 S.W.2d 31, 33–34
(Tex. App.—Houston [1st Dist.] 1994, writ denied). We may affirm a summary
judgment only when the record shows that a movant has disproved at least one
element of each of the plaintiff’s claims or has established all of the elements of an
affirmative defense as to each claim. Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d
420, 425 (Tex. 1997); Farah, 927 S.W.2d at 670. If the movant establishes a right
to summary judgment, the burden shifts to the non-movant to present evidence raising
a fact issue. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). When
a summary judgment does not specify the grounds on which the trial court granted it,
the reviewing court will affirm the judgment if any theory included in the motion is
meritorious. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.
1995); Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex.
App.—Houston [1st Dist.] 1995, writ denied).
Disability Discrimination
          Little brought her claim of discrimination under chapter 21 of the Texas Labor
Code. Tex. Lab. Code Ann. §§ 21.001–.556. Chapter 21provides that an employer
commits an unlawful employment practice if an employer refuses to hire an
individual on the basis of a disability. Id. § 21.051 (Vernon 1996). One of the
purposes behind chapter 21 is to provide for the execution of the policies embodied
in Title I of the Americans with Disabilities Act of 1990


 (ADA) and its subsequent
amendments. Id. § 21.001(3) (Vernon 1996); see Haggar Apparel Co. v. Leal, 154
S.W.3d 98, 100 (Tex. 2004). Because chapter 21 seeks to promote federal civil rights
policy, it is proper to look to analogous federal precedent. Little, 148 S.W.3d at 382;
Morrison v. Pinkerton Inc., 7 S.W.3d 851, 854 (Tex. App.—Houston [1st Dist.] 1999,
no pet.). Accordingly, Texas courts follow analogous federal precedent for guidance
when interpreting chapter 21. Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473,
476 (Tex. 2001). 
          In discrimination cases that have not been fully tried on the merits, we apply
the burden-shifting analysis established by the United States Supreme Court. Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003); see Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142–43, 120 S. Ct. 2097, 2106
(2000); St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 506–07, 113 S. Ct. 2742, 2747
(1993); Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53, 101 S. Ct.
1089, 1093–94 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03,
93 S. Ct. 1817, 1824–25 (1973); M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28
S.W.3d 22, 24 (Tex. 2000). Under the burden-shifting analysis, the plaintiff has the
initial burden to come forward with a prima facie case of discrimination. Reeves, 530
U.S. at 142, 120 S. Ct. at 2106; Quantum, 47 S.W.3d at 477. The plaintiff’s
establishment of a prima facie case creates a rebuttable presumption that the employer
unlawfully discriminated against the employee. Burdine, 450 U.S. at 254, 101 S. Ct.
at 1094; Quantum, 47 S.W.3d at 477. If the plaintiff is successful in demonstrating
a prima facie case, the burden shifts to the employer to articulate some legitimate,
nondiscriminatory reason for its rejection of the plaintiff. Reeves, 530 U.S. at 142,
120 S. Ct. at 2106; Quantum, 47 S.W.3d at 477. If the employer succeeds in carrying
its burden of production, the presumption of discrimination is eliminated, and the
burden shifts back to the plaintiff to present evidence that the stated reason was
merely a pretext for discrimination. Reeves, 530 U.S. at 142–43, 120 S. Ct. at 2106;
Quantum, 47 S.W.3d at 477. Even though the burden of production shifts, the burden
of persuasion remains continuously with the plaintiff. Reeves, 530 U.S. at 143, 120
S. Ct. at 2106; Farrington v. Sysco Food Servs., Inc., 865 S.W.2d 247, 251 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). 
          Furthermore, more specific to Texas, a plaintiff pursuing a state-law claim
under chapter 21 must show that discrimination was “a motivating factor” in an
adverse employment decision. Tex. Lab. Code Ann. § 21.125(a) (Vernon Supp.
2004-2005). Section 21.125(a) provides: “Except as otherwise provided by this
chapter, an unlawful employment practice is established when the complainant
demonstrates that race, color, sex, national origin, religion, age, or disability was a
motivating factor for an employment practice, even if other factors also motivated the
practice . . . .” Id. The Texas Supreme Court has held that the “plain meaning” of
section 21.125(a) “establishes ‘a motivating factor’ as the plaintiff’s standard of
causation in a [chapter 21] unlawful employment practice claim, regardless of how
many factors influenced the employment decision.” Quantum, 47 S.W.3d at 480; see
Canchola, 121 S.W.3d at 739 (confirming that “motivating factor” is proper standard
of causation, even in a “pretext” case). 
Articulation of Legitimate, Nondiscriminatory Reason   
          Because Little produced sufficient evidence to raise a fact issue regarding her
prima facie case of discrimination,


 the TDCJ was required to produce sufficient
evidence to support a legitimate, nondiscriminatory reason for the adverse
employment action. Reeves, 530 U.S. at 142, 120 S. Ct. at 2106. The burden is one
of production only, not persuasion. Id.; Russo v. Smith Int’l, Inc., 93 S.W.3d 428,
437–38 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Here, in its summary
judgment motion and attached evidence, the TDCJ asserted that it declined to hire
Little because she was not the most qualified applicant each time she applied for a
position as a food service manager. At the beginning of Kathy Cook’s five-page
“Synopsis of Summary and Analysis of Interview Paperwork,” Cook wrote that, after
she conducted an “in-depth review of the paperwork” for the 14 food service manager
positions for which the TDCJ had a record, in her opinion, “Little was not the most
qualified applicant nor did she perform significantly better than the selected
applicant(s) on any of the fourteen interviews.” Selecting a more qualified applicant
generally constitutes a legitimate, nondiscriminatory justification for a failure to hire
an applicant. Patrick v. Ridge, 394 F.3d 311, 318 (5th Cir. 2004); Manning v.
Chevron Chem. Co., L.L.C., 332 F.3d 874, 881–82 (5th Cir. 2003). Therefore,
because the TDCJ produced evidence to support a legitimate, non-discriminatory
reason for not hiring Little, the presumption of discrimination created by Little’s
prima facie showing is eliminated. Reeves, 530 U.S. at 142–43, 120 S. Ct. at 2106;
Burdine, 450 U.S. at 255, 101 S. Ct. at 1094–95; Quantum, 47 S.W.3d at 477. 
Accordingly, we next address whether Little raised a genuine issue of material fact
as to whether the TDCJ’s articulated reason was a pretext for unlawful discrimination.
Pretext for Discrimination 
          Once an employer produces sufficient evidence to support a nondiscriminatory
explanation for its decision, a plaintiff must be afforded the opportunity to show “that
the legitimate reasons offered by the defendant were not its true reasons, but were a
pretext for discrimination.” Reeves, 530 U.S. at 143, 120 S. Ct. at 2106 (citing
Burdine, 450 U.S. at 253, 101 S. Ct. at 1093). That is, a plaintiff may attempt to
prove that she was the victim of intentional discrimination “by showing that the
[defendant’s] proffered explanation is unworthy of credence.” Id. (citing Burdine,
450 U.S. at 256, 101 S. Ct. at 1095). Although the presumption of discrimination
disappears once the defendant meets its burden of production, it is still proper to
consider the evidence establishing the plaintiff’s prima facie case “and inferences
properly drawn therefrom . . . on the issue of whether the defendant’s explanation is
pretextual.” Id. (citing Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095). As noted
above, because a plaintiff pursuing a state-law claim under chapter 21 must show that
discrimination was “a motivating factor” in an adverse employment action, the Texas
Supreme Court in Quantum noted that “[p]roving [that] the employer’s stated reason
for the [adverse employment action] is [a] pretext is ordinarily sufficient to permit the
trier of fact to find that the employer was actually motivated by discrimination.” 47
S.W.3d at 481–82 (citing Reeves, 530 U.S. at 147–48, 120 S. Ct. at 2108–09); see
Tex. Lab. Code Ann. § 21.125(a). 
          Little correctly notes that she is not required to present additional, independent
evidence of intentional discrimination under Reeves. See Price v. Fed. Express Corp.,
283 F.3d 715, 722 n.4 (5th Cir. 2002). However, the United States Supreme Court
has made it clear that it is not sufficient merely to show that the employer’s reasons
are false or not credible; the plaintiff must prove that the employer discriminated
intentionally. Reeves, 530 U.S. at 146–47, 120 S. Ct. at 2108. The Court noted that
the “ultimate question” in cases alleging employment discrimination “is whether the
plaintiff was the victim of intentional discrimination.” Reeves, 530 U.S. at 153, 120
S. Ct. at 2111. The Court did acknowledge, however, that “a plaintiff’s prima facie
case, combined with sufficient evidence to find that the employer’s asserted
justification is false,” may be sufficient to infer unlawful discrimination. 530 U.S. at
148, 120 S. Ct. at 2109. The Court also made it clear that “instances [exist] where,
although the plaintiff has established a prima facie case and set forth sufficient
evidence to reject the defendant’s explanation, no rational factfinder could conclude
that the action was discriminatory.” Id. 
          In the summary judgment setting, however, the plaintiff need not prove pretext
but merely establish a genuine issue of material fact on the matter. Amburgey v.
Corhart Refractories Corp., 936 F.2d 805, 813 (5th Cir. 1991); Russo, 93 S.W.3d at 
438. In the context of a summary judgment proceeding, “the question is not whether
the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of
fact regarding pretext.” Amburgey, 936 F.2d at 813 (citations omitted). Whether
summary judgment is appropriate will depend upon numerous factors, including “the
strength of the plaintiff’s prima facie case, the probative value of the proof that the
employer’s explanation is false, and any other evidence that supports the employer’s
case and that properly may be considered.” Price, 283 F.3d at 720 (citing Reeves,
530 U.S. at 148–49, 120 S. Ct. at 2109). “[A]n employer would be entitled to
judgment as a matter of law if the record conclusively revealed some other,
nondiscriminatory reason for the employer’s decision, or if the plaintiff created only
a weak issue of fact as to whether the employer’s reason was untrue and there was
abundant and uncontroverted independent evidence that no discrimination had
occurred.” Reeves, 530 U.S. at 148; 120 S. Ct. at 2109. 
           A plaintiff may raise a genuine issue of material fact about pretext by
presenting evidence that she is clearly better qualified than the applicant actually
selected for the positions in dispute. See Stewart v. Sanmina Tex. L.P., 156 S.W.3d
198, 210 (Tex. App.—Dallas 2005, no pet.); see also Russo, 93 S.W.3d at 440. The
evidence of relative qualifications must be more than merely subjective and
speculative. Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996);
Stewart, 156 S.W.3d at 210; Russo, 93 S.W.3d at 440. It must be specific and
comparative in nature. Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 959 (5th Cir.
1993); Stewart, 156 S.W.3d at 210; Russo, 93 S.W.3d at 440. However, although
pointing to clearly superior qualifications is one permissible way to demonstrate
intentional discrimination, a plaintiff is not required to make this showing. Julian v.
City of Houston, Texas, 314 F.3d 721, 728 (5th Cir. 2002) (emphasis in original);
EEOC v. Manville Sales Corp., 27 F.3d 1089, 1096 n.5 (5th Cir. 1994) (noting that
showing by plaintiff that he was “clearly better qualified” is “merely one of many
ways that a plaintiff can show” that employer’s actions were pretext for
discrimination; thus plaintiff “may prevail without a showing that he was clearly
better qualified than those employees who were not terminated”); Amburgey, 936
F.2d at 814 (providing that “evidence that the plaintiff was clearly better qualified
would be one way of showing” defendant’s proffered nondiscriminatory reasons were
actually pretext for discrimination); Jaso v. Travis County Juvenile Bd., 6 S.W.3d
324, 330 (Tex. App.—Austin 1999, no pet.) (stating that “[t]o prove pretext the
plaintiff may show that he is clearly better qualified . . . but he may also prove pretext
by other evidence”). As noted above, a plaintiff may attempt to prove that she was
the victim of intentional discrimination by showing that the defendant’s proffered
explanation is unworthy of credence. See Reeves, 530 U.S. at 147, 120 S. Ct. at 2108
(noting that “[p]roof that the defendant’s explanation is unworthy of credence is
simply one form of circumstantial evidence that is probative of intentional
discrimination, and it may be quite persuasive”).
          In the instant case, Little challenges the TDCJ’s proffered justification for her
discharge in two ways. First, she asserts that there is a fact issue as to whether she
was better qualified than most of the applicants actually selected for the food service
manager positions for which she applied. Second, she asserts that other evidence
undermines the overall credibility of the TDCJ’s proffered justification. 
          In regard to her first point, Little, in her response to the TDCJ’s summary
judgment motion, argues that “there is ample evidence that the [TDCJ’s] explanation
for refusing to hire Ms. Little on several occasions is false” because “[t]he individuals
who made the hiring decisions . . . had to admit that Ms. Little significantly exceeded
one or more of the selected applicants in relevant years of experience and did at least
as well in answering the interview questions.” Little points to the evidence attached
to her response to the TDCJ’s motion, consisting of the actual applications and
“interview documentation forms” that raise a fact issue. For several of the positions
for which Little applied, Little compares the years of job-related experience that the
TDCJ credited to her with the years of job-related experience that the TDCJ credited
to the selected applicants. Her summary judgment evidence shows that, for a majority
of the positions for which Little applied, the TDCJ documented her job-related
experience as being greater than that of the selected applicants. For example, the
“interview documentation forms” for the Gist Unit position, posted February 4, 1998,
show that Little was credited with 11 years of experience, whereas the selected
applicant was credited with four years and two months of experience.


 We note that
the summary judgment evidence on which Little relies regarding relative
qualifications is “specific” and “comparative in nature,” and not “mere subjective
speculation.” See Nichols, 81 F.3d at 42 (noting that plaintiff submitted only his own
affidavit and deposition testimony claiming to be better qualified than three
remaining administrators); see also Bodenheimer, 5 F.3d at 959 (noting that plaintiff
proffered no evidence comparative in nature as to whether he was clearly better
qualified). 
          Furthermore, Little also points to the deposition testimony of five TDCJ
employees who were involved in the interviewing and hiring processes for the food
service manager positions for which she applied. When asked if he found “any basis
for distinguishing the answers that [a selected applicant] gave from those that Ms.
Little gave,” Bobby Malnar replied, “No. They’re good answers.” Malnar also
testified that, for the Duncan Unit position, posted on March 12, 1999, the first
selected applicant for the position was not the best applicant because she had falsified
information on her application, that it was possible that Little was the best applicant,
and that he did not know why the second selected applicant had been selected. When
asked about Little’s answers given in her response to interview questions in regard
to the Terrell Unit position, posted on September 24, 1998, Loyd Massey agreed that
Little “answered everything correctly.” Concerning the same position, Massey agreed
that Little was credited with “almost twice the amount of experience” than one of the
selected applicants actually had. 
          Moreover, Little relies on more than just comparative qualifications to raise an
issue of fact regarding pretext. She also presented evidence to raise a fact issue as to
whether the TDCJ’s proffered reasons for not hiring her were unworthy of credence. 
The summary judgment evidence shows that, between October 1996 and April 1999,
Little interviewed for a position as a food service manager on 14 separate occasions,
and that, although the TDCJ concedes that Little “generally meets the minimum
requirements to be a food service manager,” Little was not hired to fill any of those
positions. Little also notes that, although the job description for the food service
manager positions sought by Little contained no physical requirements, many of the
interviewers who were deposed “identified” such physical requirements. 
          In fact, the summary judgment evidence shows that the job description for the
“Food Service Manager II” position did not include any express physical
requirements, and, in regard to the “Food Service Manager III” position, Little
testified that “the job descriptions did not state physical requirements.” However, in
his deposition, Ronald Kelly agreed that there are certain things that food service
managers “need[] to be physically capable of doing.” Kelly also agreed that a person
would “need to be able-bodied” and that “physical requirements” might be necessary
when “working with inmates” because of fights between inmates and between
inmates and the TDCJ employees. Moreover, in their depositions, Loyd Massey,
Bobby Malnar, Wilburn Gore, and James Foxworth indicated that, for the food
service manager positions, the following physical requirements would be necessary: 
heavy lifting, heavy carrying, pulling, repeated bending, twisting, kneeling, pushing,
stooping, operating motor equipment, and walking on slippery or uneven walking
surfaces. Malnar and Massey indicated that a person in a wheel chair would not be
able to be a food service manager, and Massey also stated that a person on crutches
or missing a leg, without the aid of a prosthesis, could not be a food service manager. 
Finally, Gore stated that, given the physical requirements for food service managers,
although “not undoable,” “it could be a problem” for a person in a wheel chair or on
crutches. 
          The TDCJ’s proffered justification could be perceived as even less credible
when viewed in light of the strength of Little’s prima facie case. As previously noted,
it is proper to consider evidence establishing Little’s prima facie case, as well as
inferences properly drawn therefrom, in determining whether the TDCJ’s explanation
is pretextual. Reeves, 530 U.S. at 143, 120 S. Ct. at 2106. In Little’s affidavit, she
testified that, “[w]hen I walk, my left leg remains stiff, and, with each step, I must
swing it out away from my body to clear the floor.” Moreover, when asked if he had
noticed that Little had walked with a limp at one of her interviews, Ronald Kelly
stated that “[i]t’s something you can’t miss unless you’re just totally blind,” and
James Foxworth stated that he did not “remember [Little] not so much” as walking
with a limp but “that she walked with one leg stiff.” In light of this evidence, the
Texas Supreme Court held that,“[i]n the light most favorable to Little, the summary
judgment record reflects that, at the time of the adverse employment actions of which
she complains, she was significantly restricted as to the manner in which she could
walk compared to the manner in which the average person in the general population
could walk.” Little, 148 S.W.3d at 384. 
           The TDCJ contends that the evidence it produced showed that Little is not
clearly better qualified than the selected applicants as a matter of law. The TDCJ
cites EEOC v. Louisiana Office of Community Services for the proposition that a
“court’s evaluation of job qualifications is inherently less reliable than one made by
those charged with evaluating applicants in the particular field, and an inference of
pretext is thus inappropriate unless the difference in qualifications is great.” 47 F.3d
1438, 1444–45 (5th Cir. 1995). However, we again note that, while Little may
present evidence that she is clearly better qualified than the selected applicants to
raise a fact issue regarding pretext, she is not required to do so. See Julian, 314 F.3d
at 728; Manville Sales Corp., 27 F.3d at 1096 n.5; Amburgey, 936 F.2d at 814; Jaso,
6 S.W.3d at 330. Rather, Little may raise a fact issue regarding pretext by other
evidence, such as presenting evidence that the TDCJ’s proffered reason for not hiring
her was “unworthy of credence.” See Reeves, 530 U.S. at 143, 120 S. Ct. at 2106. 
Moreover, when reviewing a summary judgment motion, because Little is the non-movant, we must take her evidence as true, indulge every reasonable inference in her
favor, and resolve all doubts in her favor. Little, 148 S.W.3d at 381. 
          We conclude that the summary judgment evidence does raise a fact issue as to
whether Little was clearly better qualified than many of the selected candidates for
the food service manager positions for which she applied. Moreover, considering the
summary judgment evidence that Little had several more years of experience than
many of the selected applicants for the 14 food service manager positions, that several
of the TDCJ’s hiring personnel identified physical requirements for a position as food
service manager when the job descriptions required none, that at least two of Little’s
interviewers were very much aware of her limp at the time of Little’s interviews, that
the TDCJ conceded that Little was minimally qualified for the positions, and that
Little was not hired after she applied 14 times within a three-year span, we conclude
that a reasonable fact finder could infer that the TDCJ’s proffered explanation was
unworthy of credence and that the TDCJ intentionally discriminated against Little. 
          We sustain Little’s issue regarding pretext.
 
 
 
 
 
 
Conclusion
          Because Little raised genuine issues of material fact regarding pretext, we hold
that the trial court erred in granting the TDCJ’s motion for summary judgment. We
reverse the judgment of the trial court and remand this cause to the trial court for
further proceedings in accordance with this opinion.
 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Nuchia, Jennings, and Alcala.