Margaret A. QUINN, Appellant/Cross–Appellee,

v.

NAFTA TRADERS, INC., Appellee/Cross–Appellant.

No. 05–07–00340–CV.

Court of Appeals of Texas, Dallas.

Feb. 21, 2012.

Janette Johnson, Christine Neill Huffman, Janette Johnson & Associates, for Appellant.

Alan L. Busch, Robert Ruotolo, Busch Ruotolo & Simpson, LLP, Dallas, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION ON REMAND

Opinion by Justice MORRIS.

This is an appeal from a trial court order confirming an arbitration award in favor of Margaret A. Quinn on a sex discrimination claim she brought under Texas law against her former employer, Nafta Traders, Inc. In our original opinion, we denied cross-appellant Nafta's request for an expanded judicial review of the award based on the parties' arbitration agreement and held that parties seeking judicial review of an arbitration award covered under the Texas Arbitration Act were limited to a review based on the statutory grounds enumerated in the Act. The Texas Supreme Court disagreed and reversed our decision. It then remanded the case to us to conduct the review to which the parties contractually agreed. We now address Nafta's complaints of reversible error with respect to the arbitrator's award. For the reasons that follow, we conclude Nafta's complaints lack merit. We affirm the trial court's order confirming the arbitrator's award.

## I.

Nafta hired Quinn in December 2001 to manage the company's operations. At the time she was hired, Quinn became Nafta's only female manager and reported directly

to Nafta's owners Marc and Robert Schlachter. Although hired to replace Steve Parsons, Nafta's vice president of operations, Quinn was not immediately given Parsons's title. She began work as director of operations but immediately requested and received approval to change her title to vice president of operations. Nine months later, in September 2002, the company hired Ken Holbrook as chief operating officer. Quinn then began reporting to Holbrook. Quinn testified in detail about Holbrook's derogatory and disparate treatment of women, use of profanity, and gender-based humor in the workplace. Some examples of Holbrook's conduct included his denial of Quinn's vacation requests while granting male managers' requests, reference to another manager's wife's breasts as "big knockers" at a managers' luncheon meeting, and entertaining customers and vendors, along with other male Nafta employees, at topless men's clubs.[1] There was also evidence of Holbrook's reference to Nafta female sales representative Lorraine Jaso's client Kotimex as "Kotex" and his frequent use of the word "bitch" when referring to a female client of Beatrice Cruz–Brown, another female sales representative. There was testimony that even though Jaso and Cruz–Brown tried to get Holbrook to stop using the terms "Kotex" and "bitch," he did not. Cruz–Brown testified that when she had trouble selling a certain product, Holbrook responded, "I'll just give it to Randy, a man can do it."

Quinn also recounted an incident when Holbrook helped make a Halloween costume for Marc Schlachter that represented a female breast. According to Quinn, Schlachter put a shirt on over some balls and wrote "boob" on the shirt. Nafta presented evidence that the costume represented a jack-o-lantern as depicted in a photo of the costume that was presented at the hearing. Quinn further testified to an incident relayed to her by Jaso in which Holbrook asked Jaso and another female employee to get something from his desk. When the two women opened his desk drawer, they found a picture of Holbrook on a golf course with two topless women.

Toward the end of 2003 and early 2004, Jaso learned that half of her territory was being redistributed to a male sales representative resulting in her loss of commissions. Holbrook admitted that he recommended the redistribution as a business strategy. When Jaso complained, Marc Schlachter told her that things would not change and "there's the door."

Both Schlachters testified that they began to discuss reducing the staff in 2003. They testified that all members of management were considered in connection with their plans to reduce staff. The Schlachters did not tell anyone about the reduction until they informed Holbrook in December 2003. Holbrook hand-wrote two memos criticizing Quinn's performance. Quinn was terminated from her position on January 8, 2004. She was the only manager to be terminated in January 2004 under the alleged layoff plan. Schlachter testified that Quinn was first because he could fill her position from within the company. Steve Parsons once again became vice president of operations.

Although Nafta asserted that Quinn's termination was part of a reduction in force as a result of a contraction in available products and lower sales, the parties stipulated that Nafta's future was bright

---

1. The Schlachters also entertained customers and vendors at topless clubs. Of the male employees who attended topless club outings, one replaced Steve Parsons as vice president of sales after Parsons returned to Quinn's position. Another received the accounts taken from the female sales representative.

on January 8, 2004. The Schlachters received Holbrook's views with respect to the decision to fire Quinn. Holbrook told Marc Schlachter only negative things about Quinn's performance. Marc Schlachter testified that, although Holbrook gave his opinion about Quinn, he denied that Holbrook played a role in making the ultimate decision to terminate her.

When Holbrook informed Quinn of her termination, he indicated there was an organizational restructure of which Quinn was not a part. She was not given any advance notice of her termination and left the premises the same day. Holbrook then sent out an email to Nafta employees that Quinn left to pursue "other opportunities." Nafta ultimately terminated other upper level male managers, including Holbrook. But unlike Quinn, they were given several months' notice before they were required to leave the company.

Holbrook did not recall the specifics of many events about which he was questioned. The arbitrator found that Holbrook was not a credible witness and that he "stated almost ninety times during cross-examination that he did not recall various events." Holbrook admitted to taking clients to men's clubs. He admitted to taking a particular client to a men's club at the client's request but said he did not take Cruz–Brown and did not recall whether Cruz–Brown was the sales representative for that client at the time. He also testified that he granted some of Quinn's requests for time off but denied one of her vacation requests because it was made with very short notice. There was evidence that Holbrook granted and denied vacation requests from both male and female employees when they were made with short notice. According to Holbrook, in the latter part of 2003, the Schlachters told him changes in the inventory from suppliers would cause a decrease in sales

and result in layoffs. Holbrook testified that when the Schlachters asked his opinion on Quinn's termination, he told them his opinion about her strengths and weaknesses. After hearing the evidence, the arbitrator found in favor of Quinn on her sex discrimination claim and awarded her $30,000 in back pay, $29,031 in special damages, $30,000 for emotional injury, $104,828 for attorney's fees, and $9,482 in costs.

## II.

On appeal, Nafta complains that the arbitrator incorrectly applied federal law to Quinn's sex discrimination claim. It also claims the evidence was legally and factually insufficient to support the arbitrator's finding of sex discrimination and mental anguish. And it challenges the arbitrator's award of "special damages" and attorney's fees.

According to the arbitration agreement between Nafta and Quinn, an arbitrator appointed to resolve disputes between them "does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." It is under this provision that Nafta challenges the legal and factual sufficiency of the evidence to support the arbitrator's findings of sexual discrimination and mental anguish. It is also under this provision that Nafta asserts that the arbitrator erroneously awarded Quinn attorney's fees and "special damages" and applied the wrong law to the case. Quinn responds that Nafta has waived most, if not all, of its arguments on appeal because it failed to present them to the arbitrator.

We begin our analysis by determining whether Nafta has preserved the various errors it contends compel us to set aside the arbitration award. As noted by

the Texas Supreme Court, "[a]n arbitration award is not susceptible to full judicial review merely because the parties have agreed." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 101 (Tex.2011). A reviewing court must have a sufficient record of the arbitration proceedings and the party challenging the award must have properly preserved its complaint "just as if the award were a court judgment on appeal." *Quinn*, 339 S.W.3d at 101–02. When ruling on motions to confirm, alter, or vacate an arbitration award based on reversible error, the trial court serves an appellate function. *See id.* at 101 n. 79. As such, our rules for preserving complaints for appeal will also apply to our review of arbitration awards and generally require a party to present a complaint to the arbitrator by timely request, objection, or motion with sufficient specificity as a prerequisite to judicial review. *See* Tex.R.App. P. 33.1(a)(1); *Quinn*, 339 S.W.3d at 101 n. 80.

 Our rules on preservation of error conserve judicial resources, promote fairness among litigants, and further the goal of accuracy in judicial decision-making. *See In re B.L.D.*, 113 S.W.3d 340, 350 (Tex.2003). And these considerations are equally important in the review of an arbitration award. *See Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 998 (5th Cir.1995), *abrogated on other grounds by Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (arbitrators would rarely be apprised of the issues before them if a party were allowed to withhold objections until its appearance in court); *see also Kendall Builders, Inc., v. Chesson*, 149 S.W.3d 796, 804–06 (Tex.App.-Austin 2004, pet. denied) (evident partiality complaint based on nondisclosure waived by proceeding with arbi-

tration despite knowledge of facts giving rise to complaint). As noted by the Ninth Circuit, a party should not be able to sit idle through an arbitration and then, after an adverse result, collaterally attack that procedure on grounds never presented to the arbitrator. *See Marino v. Writers Guild of Am. East, Inc.*, 992 F.2d 1480, 1484 (9th Cir.1993).

Nafta cites *Callahan & Associates v. Orangefield Independent School District*, 92 S.W.3d 841 (Tex.2002) for the proposition that it has the option of raising its complaints to the arbitration award either in the arbitration proceeding or in the trial court in connection with a proceeding to confirm, modify, or vacate the award. *Callahan* did not address the issue of preservation of error when a complaint of reversible error is made only to the trial court and not to the arbitrator. It is clear now that all complaints must be preserved as if the arbitration award were a court judgment on appeal. *See Quinn*, 339 S.W.3d at 101. Before addressing the merits of each of Nafta's complaints, therefore, we will first determine whether the alleged error has been properly preserved for appellate review.

### III.

 Among its complaints of reversible error, Nafta initially argues that the arbitrator applied the wrong law in two respects. Specifically, it asserts the arbitrator erred (1) in applying sexual harassment law to Quinn's sex discrimination claim and (2) in applying federal law instead of state law with respect to whether the evidence was sufficient to support a finding that Quinn's gender was a motivating factor in Nafta's decision to terminate her.[2] We initially note

---

2. Nafta argues that the arbitrator improperly inferred a discriminatory motive for Quinn's termination based solely on his disbelief of

Nafta's proffered reasons for discharging Quinn. It contends that a finding of pretext alone may be sufficient to sustain a finding of

that neither of these arguments was presented to the arbitrator. In fact, Nafta's first argument is raised for the first time on appeal.[3] Accordingly, Nafta has waived these arguments.

■ Even absent waiver, however, we are not persuaded by the merits of Nafta's arguments. The arbitrator's award clearly acknowledges Quinn's claim as one for sex discrimination rather than sexual harassment and cites case law relative to sex discrimination. Moreover, the legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the Texas Commission on Human Rights Act. *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003). Although the arbitrator cited exclusively to federal case law in his award, this fact is not dispositive on whether the arbitrator applied the correct law in analyzing the case before him. Even Nafta's post-arbitration hearing brief cites only to federal case law to support its own position. In addition to rejecting Nafta's reasons for Quinn's termination, the arbitrator made a specific finding that Quinn's termination was based on her sex. In his conclusions of law, the arbitrator also noted that the evidence demonstrated that sex was a determining factor with respect to who was to be laid off and who was to be retained by Nafta. We now turn to Nafta's complaint suggesting that the evidence was legally or factually insufficient to support

the arbitrator's finding of sex discrimination under state law.

## IV.

■ Under our procedural rules, complaints challenging the legal or factual sufficiency of the evidence in a nonjury case may be raised for the first time on appeal. *See* Tex.R.App. P. 33.1(d). An arbitration hearing is similar to a trial before the court sitting without a jury. We conclude that Nafta, because of its arbitration agreement, may raise challenges to the legal and factual sufficiency of the evidence on appeal without first presenting them to the arbitrator. In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the award, disregarding all contrary evidence that a reasonable factfinding arbitrator could have disbelieved. *See AutoZone, Inc. v. Reyes,* 272 S.W.3d 588 (Tex.2008). If there is more than a scintilla of evidence to support a finding, we must uphold it. *See City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005). Our review of the factual sufficiency of the evidence requires us to examine all of the evidence and determine whether the evidence supporting the challenged finding is so weak or so contrary to the overwhelming weight of the evidence that it is clearly wrong or unjust. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998).

---

unlawful discrimination under federal law, but claims under Texas law require the claimant to present both sufficient evidence that the employer's reason for discharge was false and additional evidence that the real reason for the discharge was because of the claimant's sex.

**3.** Nafta first asserted its second argument in its "Defendant's Response to Plaintiff's Application to Confirm Arbitration Award and Motion to Vacate/Modify the Award." Specifically, Nafta contended the arbitrator in-

correctly applied federal law because Quinn brought her arbitration claims under Texas law exclusively. It further argued that, while under federal law a finding of pretext alone may be sufficient to support a determination of sex discrimination, Texas law requires a claimant to show not only that the employer's stated reason for termination was false but also must present additional evidence that the real reason for the discharge was because of the claimant's sex.

■ The Texas Commission on Human Rights Act prohibits an employer from discharging or in any other way discriminating against an employee because of the employee's sex. TEX. LAB.CODE ANN. § 21.051(1) (West 2006). Because this case had a full hearing on the merits, we limit our inquiry to whether the evidence is legally and factually sufficient to support the arbitrator's ultimate determination that Quinn's sex was a motivating factor in Nafta's decision to terminate her.[4] *See Canchola,* 121 S.W.3d at 739.

■ Although Nafta claimed Quinn's termination was the result of a cost-savings measure due to declining revenues, there was ample evidence from which a reasonable factfinder could conclude that Quinn's sex was a motivating factor in her termination. The arbitrator found that the retention of male managers such as Holbrook, who was paid considerably more than Quinn, undermined Nafta's assertion that it was merely cutting costs and suggested Quinn's termination was tainted by consideration of her sex. The arbitrator also noted that there was evidence that Holbrook, who conferred with the Schlachters about Quinn's employment, exhibited disdain for women by his treatment of Quinn and other female employees. And we reject Nafta's contention that all of the evidence upon which Quinn relies to establish sex was a motivating factor in her termination was nothing more than legally insufficient "stray remarks" because they were not related to Quinn's

discharge. To the contrary, Quinn presented evidence that Holbrook treated her, other female employees, and female clients less favorably than men when it came to vacation requests, distribution of sales accounts, and visits to men's clubs with male employees and clients. This evidence involved actual conduct and not merely stray remarks.[5] Moreover, Nafta has not cited any authority to support its position that this evidence was irrelevant to Quinn's sex discrimination claim. This evidence was introduced to demonstrate a general pattern of discriminatory behavior focused on female employees and that Nafta, as a company, cultivated a culture of sex-based discrimination. We are aware of no case that would require evidence of hostility toward women to rise to the level of an actionable "hostile work environment" claim before it can provide evidentiary support for a claim of sex discrimination regarding more specific adverse employment actions. The general atmosphere of sexism surrounding Nafta's upper management, described by the arbitrator as a "good ole boy" system, is reflected by the evidence above and is probative of whether Nafta felt free to take sex into account when making employment decisions, such as which managers to terminate first when implementing their plans to reduce costs by cutting staff.

Nafta also argues that because Quinn was hired and terminated by the Schlachters, a presumption arose that her dis-

---

4. Only in cases that have not been fully heard on the merits do we apply the Supreme Court's burden-shifting analysis where we review the evidence in discrete segments corresponding to the claimant's prima facie case, the employer's articulation of a legitimate, nondiscriminatory reason, and a showing of pretext for discrimination. *See Little v. Tex. Dep't of Criminal Justice,* 177 S.W.3d 624, 630 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

5. Statements and remarks may serve as evidence of discrimination only if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employee or one who exerted influence over the decision-maker, and (4) related to the employment decision at issue. *See AutoZone,* 272 S.W.3d at 593.

charge was not based on her sex.[6] Regardless, even if we assume that Nafta was entitled to such a presumption, Quinn's evidence of discrimination outlined above rebutted any such presumption. Giving due deference to the arbitrator's findings on matters of weight and credibility, we conclude the evidence is both legally and factually sufficient to support his ultimate determination that Quinn's sex was a motivating factor in Nafta's decision to terminate her.

### V.

Nafta also challenges the arbitrator's award of attorney's fees. Of all the issues Nafta raises on appeal, the only complaints it presented to the arbitrator related to the award of attorney's fees to Quinn. The arbitration record reveals that both parties had rested subject to deposition designations and the possibility of a separate hearing on punitive damages. A discussion immediately followed about whether Quinn would be allowed to present evidence of her attorney's fees because she had not offered evidence on that matter during the hearing. Quinn's counsel stated that she expected the issue of attorney's fees to be addressed after the hearing as is the custom in federal court. Nafta objected on the grounds that Quinn did not comply with the arbitrator's scheduling order providing expert witness designations as well as his subsequent order explicitly permitting Quinn's counsel to offer testimony on the issue of attorney's fees at the arbitration hearing.

The arbitrator requested the parties to brief the issue of whether he could consider affidavits on the attorney's fees issue. In its post-hearing brief, Nafta asserted it would be prejudiced by allowing evidence on attorney's fees because it had been denied discovery on the necessity and reasonableness of the fees. Nafta also cited Texas Rules of Civil Procedure 193.6 and 215.2(b) as authority for excluding evidence of Quinn's attorney's fees. The arbitrator ultimately ruled that Quinn could submit an affidavit from her counsel as evidence of attorney's fees. The arbitrator also allowed Nafta to cross-examine the affiant by reconvening the hearing and allowed it to offer its own evidence. After examining the evidence submitted by both parties, the arbitrator awarded Quinn attorney's fees of $104,828.[7]

In the trial court and in this appeal, Nafta has contended the arbitrator abused his discretion in awarding Quinn attorney's fees because (1) under the applicable American Arbitration Association rule, the arbitrator could not reopen the case to allow evidence of attorney's fees absent a showing of good cause and (2) the fees were unreasonable and excessive because Quinn was successful on only one of her claims and she failed to segregate her attorney's fees.

▮▮▮▮ Nafta waived its first argument by failing to present it to the arbitra-

---

**6.** Both cases cited by Nafta to support its position are appeals from summary judgment where the burden-shifting analysis was applicable. *See Nash v. Blood & Tissue Ctr. of Tex.*, No. 03–03–00763–CV, 2004 WL 2900483 (Tex.App.-Austin Dec. 16, 2004, no pet.); *Brown v. CSC Logic Inc.*, 82 F.3d 651 (5th Cir.1996). As noted above, our inquiry on an appeal after a full trial on the merits is limited to whether the evidence is sufficient to support the ultimate finding. Moreover, much of Quinn's evidence of discriminatory intent in-

volved the influence of Holbrook, Quinn's immediate supervisor, who was hired after Quinn. Nafta has not provided any authority for applying the "same actor" presumption in such circumstances.

**7.** The award reflected a twenty percent reduction in hours claimed by Quinn as well as reductions related to the post-hearing fee issue.

tor in its opposition to Quinn's request to present evidence of attorney's fees by affidavit. With respect to its second argument, Nafta complained to the arbitrator that the fees related to Quinn's unsuccessful age discrimination and retaliation claims should not be included in the award but that Quinn's evidence made it impossible to determine how much time was spent on pursuing those separate theories of recovery. Assuming Nafta's objection was sufficient to preserve the complaint it now makes on appeal, we conclude its argument is without merit. A claimant must segregate if attorney's fees relate solely to a claim for which fees are unrecoverable. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313 (Tex.2006). When submitting her request for attorney's fees, Quinn noted that fees involving unsuccessful claims when entwined with successful claims did not mandate a reduction in fees. Additionally, the arbitrator noted in his final award that Quinn's damages would have been the same irrespective of the theory of recovery upon which she prevailed and that no reduction for fees relating to the age discrimination or retaliation claim was warranted. Based on the record before him, we conclude the arbitrator could have determined that segregation was not required. Moreover, we note that the arbitrator reduced the number of hours Quinn's attorneys claimed by twenty percent before making his fee award. Because we conclude Nafta failed to preserve its first complaint with respect to the award of attorney's fees and did not demonstrate any reversible error with respect to its second complaint, Nafta has failed to establish the arbitrator abused his discretion in his award of attorney's fees to Quinn. We therefore resolve this issue against Nafta.

## VI.

■ We next address Nafta's challenge to the arbitrator's award of damages in the amount of $29,031 representing Quinn's savings withdrawals, insurance policy loan, health insurance premium payments, and her 401(k) plan withdrawal and penalty. Nafta argues that such an award is not authorized under the TCHRA and, even if such damages were allowed, the arbitrator used the incorrect measure of damages in making his award. Nafta did not object when Quinn testified to these damages. In its post-hearing brief, Nafta did not argue that these amounts were not recoverable but merely asserted the 401(k) withdrawal and penalty, insurance policy loan, and savings withdrawals lacked documentary evidence, were not in Quinn's discovery responses, and there was no evidence that these monies were actually spent to pay for expenses she incurred. Moreover, Nafta did not complain after the arbitrator issued his interim award, which included the $29,031 in special damages. The arguments Nafta now asserts were first raised in the trial court in its motion to vacate the award. Because the arguments it now raises with respect to the special damages award were never presented to the arbitrator, Nafta has waived them.

## VII.

Nafta also challenges the sufficiency of the evidence to support the arbitrator's award of $30,000 for the non-pecuniary, emotional injuries Quinn suffered as a result of her termination. Nafta asserts there was no evidence of the nature, duration, or severity of these injuries. It also contends the amount of damages the arbitrator awarded for these injuries was arbitrary because the arbitrator indicated Quinn was entitled to an award for her emotional trauma that was equal to the amount of her back pay.

■ The TCHRA allows compensatory damages for emotional pain, suffering,

mental anguish, loss of enjoyment of life, and other non-pecuniary losses provided such damages are supported by competent evidence. *See AutoZone Inc. v. Reyes*, 272 S.W.3d 644, 655–56 (Tex.App.-Corpus Christi 2006), *rev'd on other grounds*, 272 S.W.3d 588 (Tex.2008). Here, Quinn testified to various types of emotional distress that began as soon as Holbrook fired her until she began to achieve some successes in her new job at Wal–Mart. She stated that she was very humiliated to sit in front of Holbrook "and have him smile at me and say, '[Y]our position has been eliminated. You're not part of our organizational structure.'" She testified that she was embarrassed in front of the people she worked with and in front of her friends and family. She also noted that she had a tremendous amount of anxiety being single, not having a job, and knowing she would be eroding the financial base she had been building. She experienced "a lot of fatigue, a lot of anxiety, a lot of nights not sleeping...." She further testified that she felt demeaned and disrespected and "it kind of eroded away the 21 years of experience that I acquired and built." Quinn testified that she took over-the-counter sleep enzymes and Pepto Bismol to help with her symptoms. She stated that her anxiety and depression symptoms lasted until she received a promotion at Wal–Mart in July of 2004.

Quinn's testimony adequately conveys that the termination weighed heavily on her mind and adversely affected her emotional well-being for six months. We conclude the foregoing evidence is legally suf-ficient to establish that Quinn experienced compensable mental anguish from Nafta's wrongful termination. Moreover, we are unpersuaded by Nafta's position that the amount of the award for her emotional injuries is unsupportable merely because the arbitrator awarded a sum equal to her back pay. Quinn testified that she was depressed, suffered a tremendous amount of anxiety, and that she had trouble sleeping after she was terminated. She also testified that she took over-the-counter sleep enzymes and medicine for her symptoms and that her symptoms lasted for about six months. Considering the evidence about the adverse effect her termination had on Quinn's daily routine, the arbitrator, as factfinder, could have found an award of $30,000 for Quinn's emotional injuries was fair and reasonable. And we cannot say the evidence supporting the arbitrator's finding of emotional trauma and damages is so weak or so contrary to the evidence as would lead us to conclude that the damages awarded were arbitrary or excessive. We resolve this issue against Nafta.

Having concluded that Nafta failed to show any reversible error in connection with the arbitrator's award, we affirm the trial court's order confirming the arbitration award.