

# NUMBER 13-24-00224-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**SOUTH TEXAS COLLEGE,**                                         **Appellant,**

**v.**

**ROLANDO VILLAGRAN,**                                          **Appellee.**

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 4
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Silva**

In seven issues, appellant South Texas College (STC) appeals the denial of its combined traditional and no-evidence motion for summary judgment in this employment discrimination suit brought by appellee Rolando Villagran, a former STC employee. *See* TEX. LAB. CODE ANN. §§ 21.001–.556. We reverse and render.

## I.    BACKGROUND[1]

Villagran describes himself as a "Hispanic, gay male whose family originated [from] Mexico." He began his employment with STC in September of 2018 as a Librarian I. The duties and responsibilities of a Librarian I include serving as a library liaison to academic departments and developing and implementing library instruction sessions in accordance with the Association of College and Research Libraries guidelines. In February of 2019, STC instructor Patricia Ballenger developed some concerns regarding one of Villagran's library instruction sessions. Ballenger informed the Instruction Librarian Elizabeth Hollenbeck and Reference Librarian Minerva Alvarez that the library "instruction session should have been more tailored to the students' needs . . . and that [Villagran] had difficulty demonstrating" the session. Hollenbeck and Alvarez met with Villagran to discuss Ballenger's concerns and review a copy of the assignment used during the library instruction session. Additionally, they reviewed an email drafted by Villagran as liaison and determined "that attention also needed to be directed to his written communication skills." Hollenbeck and Alvarez offered Villagran an opportunity to improve his library instruction sessions by observing colleagues and having them observe him and provide their feedback. Villagran conducted sessions in February, March, and April of 2019. His colleagues provided feedback, including the following: "narrow down your search results," "be more concise in explaining [r]esearch [s]tarters," "multiple times . . . you were repetitive [which] . . . can be confusing [to] the students," and "creating a guide or outline will help alleviate going back and forth."

---

[1] The background facts are derived from the undisputed evidence in the summary judgment record.

In April of 2019, Associate Dean of Library Services Lisa Walters, Hollenbeck, and Alvarez initiated a "Conduct and Performance Improvement Plan" (CPIP) with Villagran, a seven-week plan to improve his liaison skills, writing skills, and library instruction skills. Hollenbeck and Alvarez met with Villagran bi-weekly to review his progress. Some of his library instruction sessions were recorded as part of his improvement plan. After his May recorded session, Walters and Hollenbeck discussed feedback with Villagran and determined "he did not have an understanding of the contents of the databases available to students and faculty and could not determine which databases should be shown during instruction sessions." Thereafter, Villagran conducted a second recorded session in June of 2019. Walters and Hollenbeck informed him that he made some improvement; however, "[h]e did not fully address the instruction request leaving out newspapers until a [student] asked," "he was not able to effectively demonstrate a search," and it appeared he "d[id] not have a basic understanding of how database researching works." In addition to the library instruction sessions, Villagran was asked to write a short essay on "several web articles covering art movements to address his knowledge in his assigned liaison subject." Upon reviewing his essay, it appeared to Hollenbeck, Alvarez, and Walters that the writing was "not his own based on the construction of sentences." When this was discussed with Villagran, he stated that it was his work and not plagiarism. Villagran subsequently submitted two short answer essays upon request. According to Walters, each essay "contained at least one act of plagiarism," and the longest essay in particular "contained six acts of plagiarism." When asked about these subsequent allegations of plagiarism, "[Villagran] responded in writing that 'It was not intended for the assignment to come out the way it did due to time constraints with other working duties.'"

3

On June 19, 2019, Walters sent a five-page letter addressed to Jim Navarro of STC's Employment Relations Office and Brenda Balderaz, the Director of Human Resources. The letter was carbon-copied to Dr. Jesus Campos, Dean of Library and Learning Support Services. In this letter, Walters referenced Ballenger's complaint about Villagran's instruction session, the CPIP, the support and feedback Villagran received, as well as his acts of plagiarism. In particular, Walters wrote:

> [Villagran] has been in the Librarian I position for seven months receiving the training provided to all new staff members. He was given several opportunities, with specific feedback, to improve library instruction. While there was minor improvement in his presentations, he is not able to successfully provide instruction to meet the job responsibilities listed in the Librarian I job description[:]
>
> - Provides library instruction in accordance with Association of College and Research Libraries (ACRL) guidelines for academic libraries and Library Services guidelines[;]
>
> - Serves as library liaison to assigned academic departments[;]
>
> - Assists in developing, implementing, and assessing library instruction services.
>
> The structure and content of [Villagran]'s writing is below the expected level of a professional librarian. During the hiring process his credentials were reviewed. The review revealed [Villagran] has two Master's Degree[s], one of which is in English, which the committee felt ensured he is able to create professional writings.
>
> Plagiarism is a violation [of] Policy 4901: Standards of Conduct:
>
> 13. Failure to meet a reasonable an[d] objective measure of efficiency and productivity;
>
> 28. Making misrepresentations or providing misleading work-related information to supervisors.

In her letter, Walters ultimately recommended termination of Villagran's employment.

4

On July 10, 2019, a memorandum addressed to Dr. Shirley A. Reed, President of STC, was sent and signed by Campos, Walters, Alvarez, and Dr. David Plummer, Vice Present of Information Services, Planning, Performance, and Strategic Initiatives. This memorandum also recommended the termination of Villagran's employment from STC based on Villagran's "failure to successfully complete his . . . CPIP[], which in part included misrepresenting work products (plagiarism) and other policy violations[,]" including "Policy #4001" of the "Code of Professional Ethics for the Administration, Faculty and Staff," as well as "Policy #4901" of the "Standards of Conduct." On the same day, Reed signed and authored a letter addressed to Villagran, informing him that his employment was terminated with STC effective July 10, 2019. Reed indicated in the letter that she decided to terminate Villagran's employment after she considered "documentary evidence" and the recommendation of termination by Campos, Walters, Alvarez, and Plummer.

On September 30, 2019, Villagran submitted a discrimination charge with the Texas Workforce Commission (TWC) and the federal Equal Employment Opportunity Commission. Villagran checked off the boxes for sex, national origin, and retaliation in the "CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))" section of the charge form. In addition, Villagran wrote in the charge form that he was "a homosexual, 36-y[ea]r-old Hispanic male of Mexican descent," contended that he had been discriminated by STC "on account of [his] race/national origin and/or sexual orientation," and further asserted that he was "discriminated against, harassed[,] and subject to a hostile work environment because of [his] national origin (Mexican descent) and sexual orientation."

5

On October 21, 2020, Villagran filed the underlying suit under the Texas Commission of Human Rights Act (TCHRA), alleging that he "became the target of increased discriminatory and retaliatory treatment because of his national origin and/or sexual orientation, as well as subject to a hostile work environment" while employed as a librarian at STC. Specifically, Villagran alleged that "within the first weeks of his employment, his supervisors attempted to transfer him to another campus," but he refused. He also stated that after his refusal, his supervisors gave him "excess assignments compared to his co-workers with the same job description," and that his supervisors were "overly and unnecessarily critical of his work and were generally rude and dismissive towards him." Villagran further alleges he was placed on a CPIP for three months, and "[d]espite doing everything that was asked of him to do under the CPIP, he received increased pressure, stress and inordinate and unnecessary scrutiny by his supervisors." Villagran asserts that other similarly-situated employees "outside of [his] protected class who also underwent a [C]PIP" were treated differently. He further states that the reasons for his termination from STC included "failure to improve, which was false"; that he "improved in all aspects of the [C]PIP, but [was] still given poor marks by supervisors compared to similarly-situated employee[s] under [C]PIP"; and that STC did not follow its own policies "in regards to employee discipline."

On December 1, 2020, STC filed its original answer asserting "it had [a] legitimate, nondiscriminatory and non-retaliatory reason[] for the employment actions complained of by [Villagran]." On January 19, 2023, STC filed a combined traditional and no-evidence motion for summary judgment, wherein STC asserted that the trial court lacked jurisdiction over Villagran's claims because its immunity was not waived under the

6

TCHRA. In support of its motions, STC attached Villagran's original petition, Villagran's oral deposition, emails sent by Hollenbeck to Villagran, a copy of the written CPIP signed by Villagran and Alvarez, writing samples purporting to show Villagran's acts of plagiarism, a copy of Walter's letter to Navarro and Balderaz recommending Villagran's termination, a copy of the memorandum recommending termination sent to Reed, Reed's letter to Villagran notifying Villagran that his employment was terminated, an affidavit by Navarro, and Navarro's "Investigation Report Memorandum."

On February 14, 2024, the trial court conducted a hearing on STC's motion for summary judgment. At the hearing, Villagran's counsel requested ten days to file a responsive pleading to STC's motion.[2] The trial court then heard brief arguments regarding STC's motions. Villagran announced that he was "dropping" his retaliation claim as well as "removing" his claim for exemplary damages. The trial court announced that it was going to rule on STC's motion "by submission" on March 14, 2024, and allow the parties to file responses and replies. Villagran did not file any responsive pleading to STC's motion prior to the trial court's ruling on said motion.[3]

On April 16, 2024, the trial court entered its order denying STC's combined traditional and no-evidence motion for summary judgment. The order did not state the basis of the trial court's ruling. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544,

---

[2] When Villagran's trial counsel asked STC's trial counsel if he was opposed to Villagran's counsel filing a response with evidence, STC's trial counsel responded, "No."

[3] Villagran also did not file any other pleading or motion before the trial court ruled on STC's combined motion for summary judgment.

549 (Tex. 2019) (noting that § 51.041(a)(8) "allows an interlocutory appeal to be taken when 'the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise'" (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

A trial court's ruling on a summary judgment motion is reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Our de novo standard of review extends to both "traditional" and "no evidence" summary judgments. *Shaun T. Mian Corp. v. Hewlett–Packard Co.*, 237 S.W.3d 851, 855 (Tex. App.—Dallas 2007, no pet.).

For a "traditional" summary judgment, the movant bears the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). To meet this burden as a defendant, the summary judgment movant must either disprove at least one essential element of a claim as a matter of law or conclusively establish all elements of an affirmative defense to the claim. *Sorrow v. Harris Cnty. Sheriff*, 622 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (citing *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996) (per curiam)). Once the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue on the elements or claims negated. *See Tawil v. Cook Child.'s Healthcare Sys.*, 582 S.W.3d 669, 681 (Tex. App.—Fort Worth 2019, no pet.) (citing *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999)).

A "no evidence" summary judgment is properly granted if, after adequate time for discovery, the movant asserts there is no evidence supporting one or more specified elements of a claim or defense on which the nonmovant bears the burden of proof at trial, and the nonmovant then produces no summary judgment evidence raising a genuine issue of material fact on those elements. TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam).

While the burdens vary for the different types of motions, summary judgment evidence was presented to the trial court; therefore, the "differing burdens are immaterial and the ultimate issue is whether a fact issue exists." *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019); *see Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024); *In re Cobb*, 714 S.W.3d 656, 666 (Tex. App.—Corpus Christi–Edinburg 2024, orig. proceeding).

In reviewing summary judgments, we review the evidence in the light most favorable to the nonmovant. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We indulge every reasonable inference and resolve any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and disregard contrary evidence to the nonmovant unless reasonable jurors could not. *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller*, 168 S.W.3d at 827). Circumstantial evidence may be offered to raise an issue of material fact so long as the evidence transcends mere suspicion. *Harrell v. Hochderffer*, 345 S.W.3d 652, 661 (Tex. App.—Austin 2011, no pet.) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

9

The TCHRA prohibits an employer from committing an "unlawful employment practice" against an employee "because of" the employee's "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. §§ 21.002(8)(D), 21.051. It also prohibits employers from retaliating against employees for engaging in certain protected activities. *See id.* § 21.055.

The TCHRA waives governmental immunity to suit, "but only when the plaintiff states a claim for conduct that actually violates the statute." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (citing *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). If a plaintiff fails to allege a violation of the TCHRA, then the trial court does not have jurisdiction, and the claim should be dismissed. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012).

Recognizing that an employer's "motives are often more covert than overt, making direct evidence of forbidden animus hard to come by," the United States Supreme Court created the *McDonnell Douglas* burden-shifting framework, which the Texas Supreme Court has since adopted for its analysis of TCHRA claims based on circumstantial evidence.[4] *Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) ; *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 583 (Tex. 2017) (quoting *Mission Consol.*, 372 S.W.3d at 634); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also City of Richland Hills v. Childress*, No. 02-20-00334-CV, 2021 WL 4205013, at *4 (Tex. App.—Fort Worth Sept. 16, 2021, pet. denied) (mem. op.) (noting

---

[4] "Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,'" we consider analogous federal cases interpreting Title VII. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) (quoting TEX. LAB. CODE ANN. § 21.001(1)).

the "rarity" of the existence of direct evidence of discrimination in employment cases). "Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination"— that is, the plaintiff must provide evidence of each element of his claim. *Mission Consol.*, 372 S.W.3d at 634. "Although the precise elements of this showing will vary depending on the allegations, . . . the plaintiff's burden at this stage of the case 'is not onerous.'" *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Rincones*, 520 S.W.3d at 584.

A plaintiff's failure to make a prima facie case, however, "means the plaintiff never gets the presumption of discrimination." *Mission Consol.*, 372 S.W.3d at 637. "[T]hat failure also means the court has no jurisdiction and the claim should be dismissed." *Id.* Only if the plaintiff establishes a prima facie case of discrimination will the burden then shift to the defendant to negate or rebut the plaintiff's prima facie case; this generally requires that the defendant produce evidence of "a legitimate, nondiscriminatory reason" for the defendant's actions.[5] *Flores*, 612 S.W.3d at 305; *see Alamo Heights*, 544 S.W.3d at 782. Thereafter, the burden returns to the plaintiff, who must "overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext." *Flores*, 612 S.W.3d at 305.

---

[5] We note that the *McDonnell Douglas* burden shifting analysis is not applicable to claims of harassment based on hostile work environment once a court concludes that a plaintiff has met her burden to establish a prima facie case. *See Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.) (collecting cases).

11

### III.  ANALYSIS

In its first issue, STC argues that the trial court erred in denying its no-evidence motion for summary judgment as to all of Villagran's claims because he produced no evidence to support them, and thus, did not trigger a waiver of its sovereign immunity. In its second through fifth issues, STC argues that traditional summary judgment was warranted because there was evidence "disproving" some elements of Villagran's claims of national origin discrimination, sexual orientation discrimination, hostile work environment, and retaliation. In its sixth issue, STC argues there was no evidence to establish that its "legitimate, non[]discriminatory reason for Villagran's termination was pretextual or that national origin and/or sexual orientation was a motivating factor in the termination." We address these issues together, claim by claim. *See Scripps*, 573 S.W.3d at 790; *In re Cobb*, 714 S.W.3d at 666.

### A.    National Origin Discrimination

To establish a prima facie case of employment discrimination for his national origin claim, Villagran was required to plead and produce evidence (1) that he was a member of a class protected by the TCHRA, (2) that he was qualified for his employment position, (3) that he was terminated from his employment, and (4) that he was replaced by someone outside his protected class after his termination (or was treated differently than similarly situated employees). *See Tex. Dep't of State Health Servs. v. Resendiz*, 642 S.W.3d 163, 173 (Tex. App.—El Paso 2021, no pet.) (citing *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)).

With respect to Villagran's national origin claim, STC argues, among other things, that Villagran presented no evidence establishing that he was replaced by someone

outside his protected class or otherwise treated less favorably than similarly situated employees. During Villagran's deposition testimony, the following exchange occurred:

[STC's counsel]: Okay. Did you ever discuss with anybody at STC what your national origin was?

[Villagran]: Just that I'm Hispanic, Mexican-American.

[STC's counsel]: Who did you discuss that with?

[Villagran]: To my . . . other librarian colleagues . . . Ms. Maureen Mitchell and Ms. Sabrina Deanda. And sometimes just like also my background where my parents worked.

. . . .

[STC's counsel]: Did you tell them where you were born?

[Villagran]: Yes.

[STC's counsel]: Okay. So you told them you were born in?

[Villagran]: I was born here in the—in Mission.

. . . .

Yes. Then my . . . mother was born here in . . . Edcouch, and my dad was [b]orn in Mexico, and that they had very little education.

. . . .

[STC's counsel]: Did you tell anybody else?

[Villagran]: No.

. . . .

[STC's counsel]: Did . . . they tell anyone about your national origin that you know of?

[Villagran]: Not that I'm aware of.

13

| | |
|---|---|
| [STC's counsel]: | Was anyone else aware of your national origin or where your parents were born or anything like that that you know of? |
| [Villagran]: | No. |
| [STC's counsel]: | Okay. What's your claim regarding national origin discrimination? |
| [Villagran]: | I felt . . . because the way I would probably write, because it was mentioned in my conduct and improvement plan. |
| | . . . . |
| | That sometimes my . . . E-mails . . . didn't sound as if it was good writing. And that was mentioned and brought up to—by [Alvarez]. |
| [STC's counsel]: | So [Alvarez] mentioned to you that she thought your E-mails didn't have good writing? |
| [Villagran]: | Yes. |
| [STC's counsel]: | And you perceived that as national origin discrimination? |
| [Villagran]: | Yes. I felt somebody may have said something, but I don't know who . . ., but I perceived it to be as if—that the way my writing was, because she . . . did make a comment, that, Oh, we're like—that as—in a closed office, she did mention to me that as of Hispanic, since we're . . . Mexican-American, we're supposed to be better writers. |
| [STC's counsel]: | [Alvarez is] Mexican-American? |
| [Villagran]: | Yes. |
| | . . . . |
| [STC's counsel]: | So she was talking about you both? |
| [Villagran]: | Yes. |

14

|  |  |
|---|---|
|  | . . . . |
|  | Like we're supposed to step it up. |
| [STC's counsel]: | Did you respond to her? |
| [Villagran]: | I—since she's my superior, I didn't. . . . |
| [STC's counsel]: | Did you . . . speak to anyone at STC about that comment? |
| [Villagran]: | No. |
|  | . . . . |
| [STC's counsel]: | . . . . Was your position of employment replaced? |
| [Villagran]: | Yes. |
| [STC's counsel]: | Do you know who it was replaced by? |
| [Villagran]: | Sara Martinez. |
| [STC's counsel]: | Do you know what her national origin is? |
| [Villagran]: | She's Hispanic as well. And I know . . . that after my termination in . . . July of 2019, I would go and check on the . . . STC website, position was posted right away in September 2019. And in January of 2020, I saw that she had already started working. |
| [STC's counsel]: | Do you know what her sexual orientation is? |
| [Villagran]: | I know she told me that she was married, she had her husband. |

STC contends that the record reflects that Villagran was replaced by someone within his protected class. We agree. As demonstrated above, Villagran indicated in his deposition testimony that his national origin was "Hispanic, Mexican-American," and that

15

his employment position was replaced by Martinez, whom Villagran stated was "Hispanic as well."[6] In his brief, Villagran identifies no other evidence in the record demonstrating that Martinez was outside his protected class in regards to his national origin discrimination claim, and we have found none. Thus, none of the summary judgment evidence before us raises a genuine issue of material fact as to whether Villagran was replaced by someone outside of his protected class. *See Resendiz*, 642 S.W.3d at 173; *cf. Mesquite Indep. Sch. Dist. v. Mendoza*, 441 S.W.3d 340, 344 (Tex. App.—Dallas 2013, no pet.) (rejecting school district's assertion that appellee, a Hispanic woman, could not present a prima-facie case of national origin discrimination when evidence raised issue of material fact as to whether the appellee was replaced by a non-Hispanic).

STC also contends that "the record clearly establishes that there were no others similarly situated to Villagran that were treated more favorably than him." Villagran argues in response that his "[c]oworker Angelica [Garcia] confirmed that Villagran was treated different and unfairly regarding the CPIP as opposed to other[,] female employees," referencing Navarro's "Investigation Report Memorandum." In his report, Navarro explained that he interviewed Garcia on October 2, 2019, as part of his investigation into Villagran's allegations. Navarro's report noted the following:

> [Garcia] stated that [she] would go to lunch with [Villagran] and had texted him when learning he separated with [STC]. [Garcia] stated that the recording of the presentations was unfair, and that in all the time they have

---

[6] "[T]he term 'Hispanic' does not literally designate either race or national origin and is instead commonly understood as implying both." *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 703 (Tex. App.—Austin 2012, pet. denied) (discussing the overlapping nature of national-origin and racial discrimination claims when employee asserts discrimination because he is Hispanic). Villagran did not expressly assert a claim of race discrimination in his petition and STC does not raise any appellate issue regarding such a claim. To the extent that Villagran's petition can be construed as asserting a claim of race discrimination, we note that Villagran states in his brief that he "is not proceeding on his race . . . claim[], and agrees th[is] claim[] should not proceed."

worked at [STC] that has never been done. [Garcia] stated that [Villagran] had informed [her] that [he] had been asked to transfer to Starr, and that it occurred several months into employment, maybe "six months" after he started. [Garcia] stated that she did not know of [Villagran's] sexuality because he did not tell [her]. [Garcia] stated that [she] had not seen or heard anything discriminatory against anyone. [Garcia] stated that [Villagran] may have been discriminated for "being too nice."

Garcia's statements, viewed in the light most favorable to Villagran, indicate at most that he was treated differently. However, Villagran was required to prove he was treated differently in comparison to *similarly situated employees*. *See Resendiz*, 642 S.W.3d at 173. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (footnote omitted). "Though their circumstances need not be 'identical,' they must be 'nearly identical.' . . . Employees with different responsibilities, supervisors, capabilities, work rule violations, or disciplinary records are not considered to be 'nearly identical.'" *Flores*, 612 S.W.3d at 312. Furthermore, "[t]o prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Monarrez*, 177 S.W.3d at 917. (quoting *McDonnell Douglas*, 411 U.S. at 804). Precise equivalence in culpability is not required, but a plaintiff must usually show that the misconduct for which he was discharged was nearly identical to the conduct engaged in by an employee whom the company retained. *Id.* at 917–18.

As mentioned above, the only evidence before us on appeal is that which STC attached to its combined motion for summary judgment. Villagran produced no evidence whatsoever—including any evidence of similarly situated employees. We have found no evidence in the record to support a conclusion that Villagran was treated differently or

17

less favorably than employees similarly situated to him. Accordingly, we conclude that Villagran failed to meet his burden to establish a prima facie case of national origin discrimination. *See Resendiz*, 642 S.W.3d at 173. Therefore, the trial court erred by denying summary judgment on Villagran's national origin discrimination claim. *See Flores*, 612 S.W.3d at 305; *Alamo Heights*, 544 S.W.3d at 782; *Rincones*, 520 S.W.3d at 585 (concluding the plaintiff's discrimination claim based on race or national origin claim failed where plaintiff "offered no proof, not even circumstantial evidence, of even one similarly situated person who was treated" preferentially).[7]

## B.     Sexual Orientation Discrimination

A prima facie case of discrimination on the basis of sex under the TCHRA requires Villagran to plead and prove that he: (1) was a member of the protected class; (2) was qualified for his position; (3) suffered a final, adverse employment action; and (4) was either (a) replaced by someone outside his protected class or (b) otherwise treated less favorably than similarly situated employees. *See Resendiz*, 642 S.W.3d at 173.

The United States Supreme Court held that homosexuality may form the basis of a sex discrimination claim. *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 660–61 (2020). The Court reiterated Title VII's "simple but momentous" message: "An individual employee's sex is 'not relevant to the selection, evaluation, or compensation of employees.'" *Id.* at 660 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989)

---

[7] Because we have concluded that Villagran failed to establish a prima facie case for his national origin discrimination claim, we decline to address STC's arguments that Villagran was not qualified for his position or that there was no evidence to establish that its "legitimate, non-discriminatory reason for Villagran's termination was pretextual or that national origin . . . was a motivating factor in the termination." *See* TEX. R. APP. P. 47.1 (requiring appellate court to hand down written opinion disposing of every issue necessary to final disposition of appeal).

(plurality op.)). "If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred." *Id.* at 659–60. The Court explicitly held that "[w]hen an employer fires an employee for being homosexual . . . , it necessarily intentionally discriminates against that individual [*in part*] because of sex." *Id.* at 646. (emphasis added). In addition, the Court held that "the plaintiff's sex need not be the sole or primary cause of the employer's adverse action." *Id.* Observing that firing an employee because he is homosexual encompasses "two causal factors . . . —*both* the individual's sex *and* something else (the sex to which the individual is attracted or with which the individual identifies)," the Court nonetheless resolved that employers may not be insulated from liability simply because their employees reframe sex discrimination in different terms. *Id*. at 661; *see also Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 603 (5th Cir. 2021).

Regarding his sexual orientation discrimination claim, the summary judgment evidence demonstrated that Villagran is a member of a protected class—a homosexual man. *See Bostock*, 590 U.S. at 656–62; *Resendiz*, 642 S.W.3d at 173; *see also Burns v. Intermodal Cartage Co.*, No. 3:22-CV-00979-E, 2024 WL 1018526, at *12 (N.D. Tex. Mar. 8, 2024) (discussing that the parties did not dispute in their briefs that Burns "was a member of a protected class—a homosexual man"). The evidence also demonstrated that Villagran was terminated from his employment, and thus suffered a final, adverse employment action. *See Resendiz*, 642 S.W.3d at 173. The evidence further established that Villagran was replaced by Martinez, a heterosexual woman and therefore a person outside of his protected class. *See id*.

19

STC contends that Villagran presented no evidence establishing that he was qualified for his position. *See id.* In *Bienkowski v. Am. Airlines*, the Fifth Circuit Court of Appeals held that a plaintiff challenging termination or demotion can ordinarily establish a prima facie case by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. 851 F.2d 1503, 1506 (5th Cir. 1988). The court noted that this meant that the plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired. *Id.* at n.3. Under this standard, "[t]he focus is 'on the employee's bare ability to do the work, not the quality of the work done.'" *Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The summary judgment evidence demonstrates that Villagran held his position for over ten months, during which he was placed into and participated in a CPIP from April 1, 2019, to June 30, 2019. STC argues that the evidence "established a number of issues had occurred that rendered Villagran unfit for the position for which he was hired," and that "[t]here was also a determination made that Villagran was not able to successfully provide instruction to meet the job responsibility listed in the Librarian I job description." There is no evidence in the record that Villagran was physically incapable of performing his tasks at the time of termination, and our focus is on Villagran's "bare ability to do the work" as opposed to the quality. *See id.*; *Bienkowski*, 851 F.2d at 1506. We therefore conclude that the evidence establishes a prima facie case that Villagran was qualified for his job at the time he was terminated on July 10, 2019. Accordingly, we conclude the evidence established a prima facie case of sexual orientation discrimination. *See Resendiz*, 642 S.W.3d at 173.

20

However, STC argues that it had a legitimate, nondiscriminatory reason for terminating Villagran's employment. *See Flores*, 612 S.W.3d at 305; *Alamo Heights*, 544 S.W.3d at 782. We agree. In this case, the evidence demonstrated that Reed received a memorandum from Campos, Plummer, Walters, and Alvarez, which recommended Villagran's termination based on his "failure to successfully complete his . . . CPIP[], which in part included misrepresenting work products (plagiarism) and other policy violations," including "Policy #4001" of the "Code of Professional Ethics for the Administration, Faculty and Staff," as well as "Policy #4901" of the "Standards of Conduct." On the same day, Reed signed and authored a letter addressed to Villagran, informing him that his employment was terminated with STC effective July 10, 2019, after she considered "documentary evidence" and the recommendation of termination by Campos, Plummer, Walters, and Alvarez. We conclude that this evidence proves as a matter of law that STC had a legitimate, nondiscriminatory reason for Villagran's termination. *See Flores*, 612 S.W.3d at 305; *Alamo Heights*, 544 S.W.3d at 782.

STC further argues that Villagran presented no evidence to establish that its legitimate, nondiscriminatory reason for terminating his employment was a pretext to sexual orientation discrimination. *See Flores*, 612 S.W.3d at 305. To raise a fact issue on the pretext element of a discrimination claim, the employee must present evidence "indicating that the non[]discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination." *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (internal quotation omitted). "A plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue 'as to whether each of

21

the employer's stated reasons was not what actually motivated the employer *and* creates a reasonable inference'" that the employer acted with the intent to discriminate. *Id.*; *see also Little v. Tex. Dep't of Crim. Just.,* 177 S.W.3d 624, 632 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[T]he United States Supreme Court has made it clear that it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally."). "An employee's subjective belief that his employer has given a false reason for the employment decision is not competent summary judgment evidence." *Chandler*, 376 S.W.3d at 814.

In his brief, Villagran states that the record "is replete with evidence of pretext," and argues that "STC's allegations of plagiarism are patently false," pointing to his own deposition testimony. We note that in his deposition testimony, Villagran did not expressly state that he did not commit acts of plagiarism. Rather, Villagran stated that he was accused by Alvaraz, Hollenbeck, and Walters of committing plagiarism when he submitted an essay that lacked parenthetical citations. Regarding that essay, Villagran explained the following:

> That essay, . . . I had two formats. The only thing is that—because my computer saved two formats at home. I also felt—I was kind of dizzy, so I submitted the wrong one without the—the—the citations when I had the other one with the citations. So I had two different versions, and I submitted the one with—with the one without the citations be—and the other one I did submit it. And I did mention that to them.

The above testimony is not evidence that Villagran did not commit acts of plagiarism. At most, the testimony merely constitutes Villagran's explanation as to why he was accused of plagiarism. Villagran's conclusory contentions that "STC's accusations of plagiarism are patently false" are insufficient to create a fact issue as to pretext . *See Raoger Corp.*

*v. Myers*, 711 S.W.3d 206, 213 (Tex. 2025) ("Speculative and conclusory testimony, by experts and lay witnesses alike, is incompetent and cannot support or defeat summary judgment."); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) ("[T]estimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law."); *see also McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 760 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("McNeel's subjective interpretation of the rules, or her disagreement over whether she violated them, is not sufficient to create a fact issue that [the employer's] stated reason was pretextual."); *Wawarosky v. Fast Grp. Hous. Inc.*, No. 01-13-00466-CV, 2015 WL 730819, at *8 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015, no pet.) (mem. op.) (employee's assertion that his conduct did not violate company policy "fail[ed] to raise a fact issue regarding [supervisor's] belief that [employee] violated the policy"); *Nash v. Blood & Tissue Ctr. of Cent. Tex.*, No. 03-03-00763-CV, 2004 WL 2900483, at *6 (Tex. App.—Austin Dec. 16, 2004, no pet.) (mem. op.) ("Nash does not deny that he conducted an unauthorized background check on Benites; he only asserts that such conduct did not constitute a violation of [the employer's] policy. His claim does not provide a scintilla of evidence to overcome [the employer's] legitimate reasons for Nash's termination.").

Villagran next argues that the evidence showed that his performance improved during his CPIP. An employee may show that the employer's reason is a mere pretext "by revealing weaknesses, implausibilities, inconsistencies, or contradictions" in the evidence. *Tex. Dep't of Transp. v. Flores*, 576 S.W.3d 782, 794 (Tex. App.—El Paso 2019, pet. denied). For example, when an employer points to an employee's poor performance as a reason for an adverse employment decision, contradictory evidence

23

that an employer is satisfied with an employee's work performance can serve as evidence of pretext. *See Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 915 (Tex. App.— Fort Worth 2018, pet. denied). Regarding his contention, Villagran suggests that he "testified that he was improving after the additional training he received in the [CPIP]." However, we have not found any such statements in Villagran's deposition testimony. Villagran also suggests that there was evidence by which STC "confirmed" his improvement, citing Navarro's report. Portions of said report contain summaries of statements Alvarez made to Navarro during an interview for his investigation, including that Villagran "showed minimal improvement, failed the [CPIP] plan, and was recommended for termination." Regarding the recommendation for his termination, the report noted that "Villagran did not successfully meet the three areas of improvement that were issued in his CPIP: presentation skills, developing liaison skills, and improving writing skills." The report also stated that "Campos informed [Villagran] that due to the lack of performance and failure to improve during the CPIP, he was being recommended for termination." We do not conclude that Navarro's report constitutes evidence that STC was satisfied with Villagran's work performance such that it serves as evidence of pretext. *See Burnett*, 552 S.W.3d at 915. Villagran points to no other evidence demonstrating that STC was satisfied with his work performance, and we have found none.

Villagran also contends that "[t]argeting an employee for extra work, scrutiny or other harassment has also been found to be permissible pretext evidence," and again relies on his own deposition testimony for support. We first note that Villagran stated in his deposition testimony that he discussed his sexual orientation with "[n]obody" at STC, he knew of no one at STC that knew of his sexual orientation, and he was unaware of

24

anyone at STC that had a similar sexual orientation as himself. We also note that Villagran did not expressly testify that STC's legitimate, nondiscriminatory reason for his termination was pretextual. Instead, Villagran testified to various acts by Alvarez and Martinez which he failed to "link" to his protective class or his termination.[8] *See Hudgens v. Univ. of Tex. MD Anderson Cancer Ctr.*, 615 S.W.3d 634, 647 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding that the appellant's deposition testimony did not link his manager's alleged discriminatory comment to the appellant's protected age group or his termination). At most, Villagran's deposition testimony constitutes nothing more than his own subjective beliefs or feelings of sexual orientation-related animus, which is insufficient to defeat summary judgment in this context. *See Alamo Heights*, 544 S.W.3d at 773 (speculation and subjective beliefs not probative of improper conduct or discriminatory animus); *Hudgens*, 615 S.W.3d at 647; *Chandler*, 376 S.W.3d at 814; *see also Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841–42 (7th Cir. 1996) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could,

---

[8] Villagran testified in his deposition that he "felt like [Alvarez] would attack" him, that she "wouldn't verbally say things, but . . . would kind of be[] dismissive." He stated that she would make time for other employees but not him. Villagran also testified that he felt Alvarez discriminated against him because when he would discuss his library instruction ratings with her, she would only tell him "Oh, that's good" and nothing more about it. Villagran expressed that Alvarez "wouldn't want to bother with [him]," and that she "wasn't that involved as a supervisor." When asked if Alvarez had "said anything to [him] or to anyone that . . . [he] felt was discriminatory," Villagran responded, "I felt—I know that I felt with—not so much through words, but I felt it through, like gestures, through eye contact." Villagran also testified that Alvarez made him "feel sometimes uncomfortable," that he would "feel as if . . . she didn't even want to get near [him] at times." Villagran further stated that he "felt [Alvarez] spen[t] more time with the wom[e]n," that she "would spend a great . . . amount of time talking to [Martinez] on the reference desk," and that he "felt . . . [those conversations] probably w[ere]n't work related, or it could[ have] been work related, but then it could also be a conversation[] as well about something else." Villagran also testified that Martinez, who later replaced him, discriminated against him with respect to his sexual orientation because she asked him about why he combed his hair the way he did, that she touched his hair, head, and the back of his neck with her hand. Villagran also stated that in another incident, Martinez was "rude" by "invading [his] space" when she stood "very close" to him while he worked on a computer at a cubicle.

by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed."). We conclude that the summary judgment evidence does not offer more than a scintilla of probative evidence that STC's legitimate reasons for Villagran's termination were pretextual. *See Flores*, 612 S.W.3d at 305; *Chapman*, 118 S.W.3d at 751. Accordingly, the trial court erred in denying summary judgment on Villagran's sexual orientation discrimination claim. *See Flores*, 612 S.W.3d at 305.

**C.    Hostile Work Environment**

A prima facie case of a hostile work environment requires Villagran to prove that: (1) he belongs to a protected group; (2) he was subjected to "unwelcome harassment"; (3) the harassment was based on the protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) STC knew or should have known of the harassment in question and failed to take prompt remedial action. *See Anderson v. Hous. Cmty. Coll. Sys.*, 458 S.W.3d 633, 646 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Bartosh v. Sam Hous. State Univ.*, 259 S.W.3d 317, 325 n.14 (Tex. App.—Texarkana 2008, pet. denied); *see also Chau v. Harlingen Med. Ctr.*, No. 13-15-00115-CV, 2016 WL 1072619, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2016, pet. denied) (mem. op.).

STC argues that no evidence established the second, fourth, and fifth elements of Villagran's hostile work environment claim. In a footnote in his brief, Villagran states that he "is not proceeding on his . . . hostile environment . . . claim[], and agrees th[is] claim[] should not proceed. Therefore, [Villagran] does not intend to brief th[is] issue[] unless directed by the Court of Appeals." We construe Villagran's statement to mean that he

26

concedes the arguments asserted by STC.

We agree with STC regarding the fifth element of Villagran's hostile work environment claim. Villagran testified in his deposition regarding various complained-of acts and behaviors by Alvarez and Martinez. However, Villagran indicated in his deposition that he did not report the complained-of conduct to anyone at STC. Thus, we agree with STC that nothing in the record establishes that STC knew or should have known of the alleged harassment in question and failed to take prompt remedial action. *See Anderson*, 458 S.W.3d at 646; *see also Fossil Grp.*, 691 S.W.3d at 881–86 (concluding that there was no evidence that any "appropriate persons" within Fossil knew or should have known about harassing conduct before the appellee sent an email in response to an in-store company survey by which the appellee stated she felt she was being sexually harassed). Having reviewed the evidence in the light most favorable to Villagran, we conclude that Villagran has not established a prima facie case with respect to his hostile work environment claim.[9] *See Tamez*, 206 S.W.3d at 582; *Anderson*, 458 S.W.3d at 646; *Bartosh*, 259 S.W.3d at 324. Therefore, the trial court erred by denying summary judgment on this claim. *See Flores*, 612 S.W.3d at 305; *Alamo Heights*, 544 S.W.3d at 782.

## D.     Retaliation

A prima facie case of retaliation requires Villagran to show (1) he engaged in an activity protected by the TCHRA, (2) he experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.

---

[9] We decline to address STC's other arguments regarding whether Villagran established a prima facie case for his hostile work environment claim. *See* TEX. R. APP. P. 47.1.

27

*See Lara*, 625 S.W.3d at 58.

STC argues that no evidence established the first and third elements of Villagran's retaliation claim. *See id.* In a footnote in his brief, Villagran states that "[a]lthough [his] petition makes . . . retaliation . . . . claims . . . , [he] is not proceeding on those claims and does not intend to brief those issues unless directed by the Court of Appeals." Thus, Villagran has provided no responsive argument regarding this issue. Again, we construe his statement to mean that he concedes the issue.

The activities protected by the statute under TCHRA are: (1) "oppos[ing] a discriminatory practice"; (2) "mak[ing] or fil[ing] a charge"; (3) "fil[ing] a complaint"; or (4) "testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE ANN. § 21.055. "[T]o invoke the protections of [§] 21.055, the conduct relied on by the employee 'must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue.'" *Lara*, 625 S.W.3d at 59 (quoting *Alamo Heights*, 544 S.W.3d at 786). "[A]lthough '[m]agic words' are not required to invoke the TCHRA's anti-retaliation protection, complaining only of 'harassment,' 'hostile environment,' 'discrimination,' or 'bullying' is not enough." *Id.* (quoting *Alamo Heights*, 544 S.W.3d at 786–87).

Villagran alleged in his petition "he was wrongfully and illegally retaliated against following his opposition and complaint of discrimination, and filing of a charge of discrimination." It is unclear what protected activity Villagran is claiming to have engaged in to support his retaliation claim. To the extent that he engaged in a protected activity by "fil[ing] a complaint" with TWC, there is nothing in the record indicating that STC was made aware that Villagran was claiming "unlawful discrimination" on the basis of national

28

origin and sexual orientation. *See Lara*, 625 S.W.3d at 59 (noting that "complaining only of 'harassment'" or "discrimination" is "not enough" to show a protected activity). We have found no evidence indicating that STC or any of its employees were ever alerted that Villagran was alleging discrimination under the TCHRA prior to the time he was terminated. Having reviewed the evidence in the light most favorable to Villagran, we conclude he failed to meet his burden to show a prima facie case of retaliation under the TCHRA. *See Lara*, 625 S.W.3d at 58; *Tamez*, 206 S.W.3d at 582. The trial court therefore erred in denying STC's summary judgment motion as to that claim.[10] *See Flores*, 612 S.W.3d at 305; *Alamo Heights*, 544 S.W.3d at 782.

## IV. CONCLUSION

We reverse the trial court's order denying STC's combined traditional and no-evidence motion for summary judgment and render judgment dismissing all of Villagran's claims for want of jurisdiction.

CLARISSA SILVA
Justice

Delivered and filed on the
8th day of January, 2026.

---

[10] Because we have effectively concluded that the trial court erred in denying STC's combined traditional and no-evidence motion for summary judgment as to all of the claims raised by Villagran's petition, we decline to address STC's seventh issue arguing that the trial court erred in denying its motion on the issue of punitive damages. *See* TEX. R. APP. P. 47.1.

29